IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| JAMES GARDNER, JR., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | 5:04-CV-121 (DF) |
| | : | |
| | : | |
| CALVIN RAMSEY, and | : | |
| TYDUS MEADOWS, | : | |
| | : | |
| Defendants. | : | |

**O R D E R**

**I.   INTRODUCTION**

Plaintiff James Gardner, Jr., proceeding pro se, initiated this § 1983 action against Defendants Calvin Ramsey and Tydus Meadows[1] ("Defendants"), alleging Defendants violated his constitutional rights while he was incarcerated at Men's State Prison in Hardwick, Georgia. (Compl., doc. 1.) Specifically, Plaintiff alleges Defendants acted with deliberate indifference to his medical needs, in violation of the Eighth Amendment to the United States Constitution. (Compl., doc. 1, at 1.)

---

[1] During Plaintiff's incarceration at Men's State Prison, Defendant Calvin Ramsey was the Medical Director of that facility, and Defendant Tydus Meadows was the Warden.

1

Before this Court is the Recommendation that United States Magistrate Judge Claude W. Hicks, Jr. entered in this case on September 27, 2005 (doc. 39). Magistrate Judge Hicks recommended that Defendants' Motion for Summary Judgment (doc. 26) be granted. Based on the Court's findings below, Defendants' Motion for Summary Judgment (doc. 26) is hereby **GRANTED**.[2]

## III. DISCUSSION

Before the Court addresses the substance of Plaintiff's § 1983 claims against Defendants, the Court must establish its jurisdiction over the subject matter of this suit by determining whether Plaintiff intended to sue Defendants in their individual or official capacities.

Federal Rule of Civil Procedure 9(a) requires plaintiffs to plead capacity when suing state officials. Fed. R. Civ. P. 9(a) (West 2005).[3] There are two purposes for this requirement. The first purpose is to establish a federal court's subject matter jurisdiction. The second purpose is to notify defendants "of the potential for payment of damages individually." *Wells v. Brown*, 891 F.2d 591, 593 (6th Cir.

---

[2] The portions of the Recommendation (doc. 39) that are consistent with this Order are hereby adopted and incorporated herein; the inconsistent portions are hereby rejected.

[3] Rule 9(a) provides, in part: "It is not necessary to aver the capacity of a party to sue or be sued or the authority of a party to sue or be sued in a representative capacity . . . *except to the extent required to show the jurisdiction of the court.*" Fed. R. Civ. P. 9(a) (emphasis added).

2

1989). In many cases, however, the complaint will not clearly specify whether officials are being sued personally, in their official capacities, or both. 'The course of proceedings' in such cases typically will indicate the nature of the liability sought to be imposed." *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) (quoting *Brandon v. Holt*, 469 U.S. 464, 469 (1985)).

In this case, the nature of the liability Plaintiff seeks to impose on Defendants is unclear from the face of his Complaint (doc. 1) and Memorandum in Support (doc. 2). If Plaintiff intended to sue Defendants in their official capacities, this Court would not have jurisdiction over Plaintiff's suit because it would be barred by the Eleventh Amendment. The Eleventh Amendment bars suits against states by the state's own citizens, unless the state has consented to the filing of such a suit, or unless Congress has abrogated the state's immunity. *Green v. Mansour*, 474 U.S. 64, 68 (1985). A suit against a state official in his or her official capacity operates as an action against the state, and is also barred by the Eleventh Amendment—even if the state is not a party of record. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

The Eleventh Amendment does not bar claims against a state official in his or her individual capacity, however. *Lundgren v. McDaniel*, 814 F.2d 600, 603 (11th

Cir. 1987). Thus, if Plaintiff intended to sue Defendants in their individual capacities, the Court's subject matter jurisdiction would not be in question.

In Plaintiff's amended complaint, he names "Calvin Ramsey–Med. Dir." and "Tydus Meadows–Warden" as defendants.[4] (Pl.'s Am. Compl., doc. 4, at 1.) Defendants did not challenge Plaintiff's failure to plead capacity in their summary-judgment motion (doc. 28). Instead, Defendants asserted the defense of qualified immunity, which is available only with respect to individual-capacity claims. *Lundgren*, 814 F.2d at 604.

Although the pleadings in this case are ambiguous with regard to the capacity in which Defendants were sued, the course of proceedings indicates that Plaintiff intended to sue Defendants individually, and that Defendants recognized Plaintiff's intention and responded accordingly. Thus, this suit is not barred by the Eleventh Amendment.

The Court will now address the substance of the parties' arguments. Defendants offer three arguments in support of their summary-judgment motion. The Court will address two of Defendants' arguments below.

---

[4] "Courts have considered the caption of a complaint when analyzing whether a lawsuit is against a defendant personally or in his official capacity, but have not treated the caption as determinative of the capacity in which a defendant is sued." *Lundgren*, 814 F.2d at 604 n.2.

4

**A. Respondeat Superior**

Plaintiff contends both Defendants were deliberately indifferent to his medical needs because Defendants either personally denied him care, or failed to ensure that his needs were met while he was incarcerated at MSP.  (Pl. Dep. 42.)  Defendants allege Plaintiff is not entitled to relief because, to the extent that Plaintiff is bringing this particular claim against them in their supervisory capacities, "the law is clear that a claim under 42 U.S.C. § 1983 cannot be based upon vicarious liability or a theory of respondeat superior for the alleged acts of others."  (Defs.' Mem. Supp. Mot. Summ. J., doc. 28, at 5-6.)

"It is axiomatic, in section 1983 actions, that liability must be based on something more than a theory of respondeat superior**."** *H.C. by Hewett v. Jarrard*, 786 F.2d 1080, 1086 (11th Cir.  1986)(citing *Monell v. N.Y. Dep't Soc. Servs.*, 436 U.S. 658, 691 (1979)).  When an inmate alleges that a supervisor is liable for the denial of the inmate's medical care, "liability may be shown by either the supervisor's personal participation in the acts that comprise the constitutional violation or the existence of a causal connection linking the supervisor's actions and the violation." *Jarrard*, 786 F.2d at 1086-1087.  Liability under § 1983 also may arise when a prison supervisor knows prison medical staff, guards, or other prison officials are

unlawfully delaying or denying an inmate's medical care, and the prison supervisor fails to correct the unlawful activity. *See* **Estelle v. Gamble**, 429 U.S. 97, 106 (1976); **Miller v. King**, 384 F.3d 1248, 1263 (11th Cir. 2004).

The Court is not convinced that Plaintiff intended to sue Defendants in their supervisory capacities alone. Plaintiff claims Defendants personally denied him medical attention in some instances. (Pl. Dep. 12-14.) In other instances, Plaintiff alleges that Defendants knew Plaintiff was in need of medical assistance, had the authority to remedy Plaintiff's situation, but did nothing. (Pl. Dep. 31-32.) Thus, the Defendants are not entitled to summary judgment on the above grounds.

## B. Judgment on the Merits

Next, Defendants assert that they are entitled to summary judgment based on Plaintiff's deliberate-indifference claims. (Defs.' Mem. 9-14.)[5]

"Deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment."

---

[5] The Court has chosen to address Defendants' deliberate-indifference argument before addressing their qualified-immunity argument because "[a] finding of deliberate indifference necessarily precludes a finding of qualified immunity; prison officials who *deliberately* ignore the serious medical needs of inmates cannot claim that it was not apparent to a reasonable person that such actions violated the law." **McElligott v. Foley**, 182 F.3d 1248, 1260 (11th Cir. 1999) (internal citations and quotation omitted). On the other hand, a finding that Defendants were not deliberately indifferent to Plaintiff's medical needs would entitle Defendants to summary judgment, thereby obviating the need for a qualified-immunity analysis.

*Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 182-83 (1976)).  However, not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Estelle*, 429 U.S. at 105.  "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id.* at 106.  "[T]o state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.  It is only such indifference that can offend evolving standards of decency in violation of the Eighth Amendment." *Id.*

The Supreme Court further elaborated on the deliberate-indifference standard in *Farmer v. Brennan*, 511 U.S. 825 (1994).  In *Farmer*, the Court held that "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. Yet, "an Eighth Amendment

claimant need not show that a prison official acted or failed to act believing that a harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842.

"To show that a prison official acted with deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and subjective inquiry." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). First, the plaintiff must demonstrate "an objectively serious medical need." *Id.* (citation omitted). Second, the plaintiff must prove that the prison official(s) acted with deliberate indifference to that need. *Id.* (citations omitted).

A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* (citation omitted). In either case, "the medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm." *Id.* (internal citations and quotation marks omitted). Here, Plaintiff's dislocated shoulder and his diabetes meet either of these definitions, and Defendants do not contend that Plaintiff does not have serious medical needs.

To establish the second element of a deliberate-indifference claim, a plaintiff must demonstrate three elements with respect to the defendant(s): (1) subjective

knowledge of a substantial risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence.

As for the first element, Plaintiff contends that both Defendants had subjective knowledge of a substantial risk of serious harm to Plaintiff. Plaintiff alleges that he was at risk because: (1) Defendant Ramsey discontinued Plaintiff's Tylenol 3 and Vioxx medication; (2) Plaintiff often was not provided his diabetic meals; (3) Plaintiff often was not provided with staff to push his wheelchair to the mess hall; (4) Plaintiff's vital signs were not properly checked; (5) Plaintiff's blood sugar was not regularly checked; (6) Plaintiff did not receive proper treatment for his shoulder; and (7) Defendants had subjective knowledge of the foregoing incidents and did not take remedial action. (Defs.' Mem. 9.)

**a. Discontinuation of Tylenol 3 and Vioxx[6] Medication/ Inadequate Treatment of Shoulder Injury**

Plaintiff alleges that Defendant Ramsey wrongfully discontinued his Tylenol 3 prescription. (Pl. Dep. 12-13.) Plaintiff was prescribed Tylenol 3 after a medical examination revealed that he had dislocated his left shoulder. (Pl. Dep. 40; Pl. Dep.

---

[6] Because Vioxx was voluntarily withdrawn from the market by its manufacturer in 2004, the Court independently finds that Defendant Ramsey's decision to discontinue Plaintiff's Vioxx prescription was not made with deliberate indifference to Plaintiff's serious medical needs. *See* Press Release, Sept. 30, 2004, http://www.vioxx.com/rofecoxib/vioxx/consumer/press_release_09302004.jsp (last visited March 3, 2006).

Ex. 8.)  Plaintiff's medical records indicate that Plaintiff was regularly prescribed Tylenol 3 from November 2003 through May 2004. (Defs.' Mem. 12; Pl. Dep. 18, 20, 21, 23; Pl. Dep. Ex. 5)  Despite Plaintiff's claim that Defendant Ramsey must have discontinued the prescription because Plaintiff only received the Tylenol 3 medication one time, there is no direct or circumstantial evidence in the record to support his contention.  Accordingly, there was not a substantial risk of serious harm to Plaintiff due to his shoulder injury because Defendants adequately addressed Plaintiff's shoulder pain with prescription medication.

Even if Plaintiff's shoulder injury placed him at risk for serious harm, and even if he did not receive any of the medicine prescribed for him, Plaintiff still cannot establish the subjective-knowledge element of this claim.  Plaintiff presented no direct or circumstantial evidence to support his contention that Defendant Ramsey actually knew that Plaintiff did not receive his medication. *See Farmer*, 511 U.S. at 837; *see also Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996 ("There is no liability for 'an official's failure to alleviate a significant risk that he should have perceived but did not. . . .") (quoting *Farmer*, 511 U.S. at 838).  Accordingly, this claim fails.

**b. Denial of Plaintiff's diabetic meals**

Next, Plaintiff alleges that Defendants' failure to provide him with transportation assistance to the mess hall caused him to miss between 10 and 50 of his diabetic meals while he was incarcerated at MSP.[7]  (Pl. Dep. 26.)  Because Plaintiff is confined to a wheelchair and has very limited use of his left arm, he cannot transport himself from his cell to the mess hall without assistance.  Plaintiff alleges he felt dizziness, dry mouth and stomach sickness on the days he did not receive his meal(s).  (Pl. Dep. 30.)  Defendants argue that this contention, even if true, does not establish a deliberate-indifference claim.  According to Defendants, assuming MSP served diabetic meals twice a day, Plaintiff should have received 446 meals while incarcerated at MSP.  If it is further assumed that Plaintiff missed 50 meals during that time, he still received 396 meals without incident.

The Court cannot conclude that the missed diabetic meals created a risk of serious harm to Plaintiff's health.  Even if Plaintiff did suffer dizziness, dry mouth and stomach sickness on the days he did not receive his diabetic meal(s), these alleged symptoms are insufficient to warrant a finding of a substantial risk of serious harm—particularly because Plaintiff continued to receive his diabetic meals on a

---

[7] Plaintiff was incarcerated at MSP from October 15, 2003 to May 25, 2004.

11

fairly regular basis.  *Cf.* **Bozeman v. Orum**, 422 F.3d 1265, 1273-75 (11th Cir. 2005) (affirming district court's denial of summary judgment where defendant prison officials knew prisoner was unconscious and not breathing and failed to check the prisoner's pulse or summon medical assistance for fourteen minutes); **Brown v. Johnson**, 387 F.3d 1344, 1351 (11th Cir. 2004) (defendants' complete withdrawal of prisoner's treatment for HIV and hepatitis constituted deliberate indifference to his serious medical needs); **Farrow v. West**, 320 F.3d 1235, 1247-48 (11th Cir. 2003) (prisoner's recognized need for denture treatment, defendant's inexplicable fifteen-month delay in providing dentures, and prisoner's suffering from pain, bleeding, swollen gums, and weight loss in the interim presented question of fact on deliberate-indifference issue).  At most, the failure to provide Plaintiff with his diabetic meals on a daily basis constitutes negligence; however, "negligence or even gross negligence" is insufficient to establish an Eighth Amendment violation. **Miller v. King**, 384 F.3d 1248, 1261 (11th Cir. 2004); *see* **Estelle**, 429 U.S. at 106.  Thus, this claim also fails.

### c. Failure to Regularly Check Plaintiff's Vital Signs and Blood Sugar

Plaintiff also claims that Defendants were deliberately indifferent to his medical needs because his blood sugar was checked only twice and his vital signs no more than three times while he was housed in MSP. (Pl. Dep. 13.)  Plaintiff does not allege any specific injury resulting from Defendants' periodic monitoring of his

12

vital signs and blood sugar—he only maintains that he "could have been injured." (Pl. Dep. 35.)

Even if this Court accepts Plaintiff's above allegations as true, there is no evidence that Defendants' mode of monitoring Plaintiff's vital signs and blood sugar created an excessive risk to his health or safety. Rather, it appears there was a simple difference in medical opinion between the prison's medical staff and the Plaintiff as to the latter's course of treatment. *See* **Harris v. Thigpen**, 941 F.2d 1495, 1505 (11th Cir. 1991). Thus, this claim fails as well.

### d. Wheelchair Assistance

Finally, Plaintiff claims that Defendants' failure to provide him daily transportation assistance to and from the mess hall constituted deliberate indifference to his medical needs. Other than several missed diabetic meals, however, Plaintiff cannot point to any injury that arose out of Defendants' periodic failure to provide this assistance.

The Court recognizes that Plaintiff is confined to a wheelchair and that he has limited use of his left arm and shoulder. The Court cannot conclude, however, that the absence of daily wheelchair assistance created a substantial risk of serious harm to Plaintiff's health or safety. The record shows that Plaintiff received nearly all of his diabetic meals while he was incarcerated at MSP, and that Plaintiff was able to "bathe, dress, [and] feed himself." (Pl. Dep. 37-38.) In short, because the missed

13

meals did not create an excessive risk to Plaintiff's health or safety, this claim must also fail.  *See* **Farmer v. Brennan**, 511 U.S. 825, 837 (1994).

## IV.    CONCLUSION

Because Plaintiff is unable to raise a genuine issue of material fact that would satisfy the objective and subjective elements required to establish a deliberate-indifference claim, Plaintiff's claims fail as a matter of law.

Accordingly, Defendants' Motion for Summary Judgment (doc. 26) is hereby **GRANTED**.

SO ORDERED, this 21st day of March, 2006.

        **/s/ C. Ashley Royal**
        C. ASHLEY ROYAL, JUDGE
        UNITED STATES DISTRICT COURT

CAR/jab